Argued January 6, decided January 13, rehearing denied February 10, 1914.

## HANAN v. SANFORD.*

(137 Pac. 772.)

Account Stated—Requisites.

Itemized statements mailed regularly by a bank to a depositor unobjected to constituted accounts stated, notwithstanding the depositor's claim that he did not understand bookkeeping and did not know what they meant.

[As to definition and elements of accounts stated, see note in 62 Am. Dec. 85. As to duty of bank depositor to examine passbook and vouchers, see note in 17 Ann. Cas. 122.]

From Douglas: LAWRENCE T. HARRIS, Judge.

Department 2. Statement by MR. JUSTICE MOORE.

This is a suit in equity by E. R. Hanan against S. A. Sanford and the First National Bank of Roseburg, a corporation, to enjoin the prosecution of an action at

*On the question what constitutes an account stated, see note in 27 L. R. A. 811.          REPORTER.

law.  The defendant herein, S. A. Sanford, com-
menced an action against the plaintiff herein, E. A.
Hanan, to recover $6,360, with interest at 8 per cent
per annum from March 2, 1911, and attorney's fees,
as evidenced by a promissory note, alleged to have
been executed by Hanan to the defendant herein, the
First National Bank of Roseburg, Oregon, a corpora-
tion, and assigned by it for value to Sanford; the com-
plaint being in the usual form.  Hanan filed an answer
in that action, admitting that he executed the note but
denied that it was given or assigned for value, and
alleged that he was entitled to relief arising out of
facts requiring the interposition of equity and mate-
rial to his defense.  Thereupon as plaintiff he com-
menced this suit, in the nature of a cross-bill against
Sanford and the bank, alleging in effect that since the
latter part of the year of 1898, and about October,
1905, he, at first as E. R. Hanan & Co. and thereafter
in his own name, deposited with such bank large sums
of money; that because of his confidence in that bank-
ing-house and in T. R. Sheridan, its then president
and manager, such deposits were made without taking
any written evidence thereof; that the bank failed to
account for a large part of the money so left with it
and wrongfully appropriated the same to its own use,
the exact amount thereof being unknown to the plain-
tiff; that the bank and its president have from time
to time misrepresented to plaintiff the true state of
his account, though he requested of them a true report
thereof; that they represented to him in March, 1909,
and about four years after he had ceased to do busi-
ness with the bank, that from its books his account
appeared to have been overdrawn to the extent of
$6,000, in consequence of which the bank examiner was
complaining, and that it would be necessary for the
plaintiff forthwith to execute to the bank his promis-
sory note for that sum in order to prevent serious

trouble which was threatened by such examiner; that desiring to effect a friendly settlement of his account, and by reason of his personal friendship and intimate business relations with Sheridan, the plaintiff believed and relied upon such representations and upon Sheridan's promise that, if such note were given, a full examination and settlement of his account would be made, and that he would never be pressed for the payment of the note; that plaintiff, believing that, if a full settlement of his account were made, the bank would have been indebted to him in a greater sum than $6,000, and that he would never be obliged to pay the note, and that because the bank was a powerful financial institution and its president reputed to be wealthy and possessing great influence, and the plaintiff being unable to cope therewith, was induced to and did sign such note; that on March 2, 1911, Sheridan further represented to plaintiff that the bank examiner was again complaining because no interest had been paid on such note, though no payment thereof had been demanded, and the plaintiff still relying upon the promise of such president to make a full statement of the account and desiring to avoid friction and enmity of the bank and of such officer, executed a new note which is sued upon; that the plaintiff is not a debtor of the bank but a creditor thereof; that he never received any consideration for executing such note; that an accounting is necessary; and that he has no plain, speedy or adequate remedy at law.

The defendants, answering the cross-bill, denied the material averments thereof and alleged in substance that for all deposits of money so made the plaintiff was given proper credit; that, during all the time he was dealing with the bank, statements showing the true condition of his account were regularly made and delivered to him, except in a few instances when he was absent from his home at Roseburg, Oregon; that

the statements that were not so handed over were kept for his use and would have been delivered to him at any time upon a request therefor; that, in addition to the amount of money deposited in the bank by plaintiff, he was on June 4, 1903, indebted to it in the sum of $17,000 evidenced by a promissory note upon which payments were made, giving a statement thereof, until only $6,000 remained due, for which a new note was given and thereafter renewed, including interest, and eventuated in the note which forms the basis of the action at law; that there was also due from plaintiff to the bank the further sum of $1,459.39, which on January 2, 1906, was charged to profit and loss and duly assigned to Sanford prior to the commencement of such action. Exhibits are attached to the answer, purporting to be statements showing the condition of plaintiff's account with the bank from December 18, 1897, to January 2, 1906.

The reply denied most of the averments of new matter in the answer and set forth a detailed statement of items of the alleged account, amounting to $17,096.72, for which sum it is asserted that no credit was given. Based on these issues, which in the pleadings are stated with great particularity, the cause was tried, resulting in a decree dismissing the cross-bill, and the plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. George M. Brown* and *Mr. Benjamin L. Eddy,* with an oral argument by *Mr. Brown.*

For respondents there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

MR. JUSTICE MOORE delivered the opinion of the court.

The testimony shows that, for several years prior to the time the promissory note described in the action

was executed, the plaintiff was engaged in buying for the market cattle, sheep and hogs, which business compelled him to borrow from the First National Bank of Roseburg, Oregon, large sums of money. When a sale of such stock was consummated, the consideration therefor was usually evidenced by a check or a draft which the plaintiff assigned to the bank either in payment of his notes which were held by that banking-house or as a fund against which to draw checks. In referring to such method of preserving a record of his business transactions, the plaintiff testified: "That is the only way I had of ever keeping any accounts straight was through the bank." In explaining why he adopted such a course of keeping a chronicle of his affairs, he further stated upon oath: "Mr. Sheridan told me, 'Now, I will see that it is all kept straight'; and I left the whole thing with him to see that it was kept straight. I did not understand keeping books."

One of the controverted items is a memorandum check in Sheridan's handwriting whereby the bank on October 1, 1901, transferred to its then president $3,000 from Hanan's account. This item appears in the statements of the account as exhibits to the answer herein. The plaintiff, as a witness, admitted that he received from the bank a copy of a part of the account, containing the entry of that sum. Referring to the memorandum check, he stated upon oath that it had been in his possession but that he had no knowledge of ever having received any benefit or value by reason thereof. He admitted that he received a partial statement of the account, but never noticed the $3,000 item until this suit was instituted, saying: "I am no bookkeeper myself and I did not understand anything about it. I never got the first part of them accounts so I could get any other bookkeeper to go over that business for me. I was right in the center of it. I

did not have either end of it.'' He further testified
that he never requested the cashier or a bookkeeper
of the bank to furnish him a statement of his account,
and that such parts thereof as he received were mailed
to him.

The evidence shows that, before the action at law
was commenced, Hanan offered to pay Sanford $1,000
down and thereafter to give him $1,000 yearly until
the debt was paid, but that the proposition was re-
jected. Hanan engaged an expert accountant who
was given every advantage carefully to examine the
books of the bank, and, while they do not in some in-
stances agree with what he claims to be a correct state-
ment of the account, the defendant's witnesses, who
were the bookkeepers and the officers of the bank, ex-
plain such discrepancies by attempting to identify
deposits made at different times or in variant sums
of money.

Sheridan was in an adjoining county when this suit
was tried and did not appear as a witness, nor was
his deposition taken. Each party reasonably sup-
posed he would be present and testify and neither
should be blamed for his failure in that respect.

No attempt will be made to reconcile or explain the
differences that may appear in the accounts of the
plaintiff and the defendants. It is believed that the
itemized statements mailed by the bank from time to
time to Hanan, and to which he made no objection until
this suit was instituted, constitute accounts stated and
are binding upon him: *Nodine* v. *First National Bank,*
41 Or. 386 (68 Pac. 1109). He did not receive all the
statements of his account that were prepared by the
bank, but from those that were mailed to him when
he was at home, accompanied by canceled vouchers,
Hanan must have known the general course pursued
by the bank in dealing with its customers, in view of

which it was incumbent upon him to call for these statements when he returned to Roseburg or to write the bank to mail them to him.  Because he was not a bookkeeper and could not understand the statements of account which he received did not relieve him of the consequences or absolve him from the legal effect of such accounts stated.      .

It was his duty to take them to some person who could explain them, but, failing in this respect, the· decree should be affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.  MR. CHIEF JUSTICE McBRIDE not sitting.